IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PATTY ELKINS,**

    **Plaintiff,**

                                              Civil Action 2:13-cv-603
                                              Magistrate Judge Elizabeth P. Deavers

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Patty Elkins, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 8). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff filed her application for benefits on March 17, 2011, alleging that he has been disabled since September 10, 2010[1], at age 58. (R. at 132-36.) Plaintiff alleges disability as a result of heart trouble, arthritis, degenerative disc disease/back pain and chronic obstructive

---

[1] Plaintiff amended her alleged disability onset date to July 1, 2011. (R. at 226.)

pulmonary disease ("COPD"). (R. at 163.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). ALJ Deborah Smith held a video hearing on October 18, 2012, at which Plaintiff, represented by counsel, appeared and testified. (R. at 33-52.) Robert E. Breslin, a vocational expert, also appeared and testified at the hearing. (R. at 53-57.) On March 18, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-21.) On May 22, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-4.) Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

**A.  Plaintiff's Testimony**

At the October 18, 2012, hearing, Plaintiff testified that she experienced pain in both knees and shoulder blades. She indicated that her lumbar area is the most painful. (R. at 44-45.) According to Plaintiff, the pain radiates down her legs, and affects her ability to stand and walk. (R. at 45.) Plaintiff testified that sought treatment from a chiropractor and noted that the treatment helped for "[p]robably about a couple of days." (*Id.*) She testified that she quit going to the chiropractor because she saw no improvement in her symptoms. (R. at 49.)  Plaintiff further testified that her legs were weak and would give out if she walked too far. (R. at 48.) Plaintiff testified that she began using a cane approximately two months prior to the hearing to help with the weakness in her legs. (R. at 49.)

Plaintiff testified that she lives with her husband and sees her eight grandchildren infrequently. (R. 34.) During a typical day, Plaintiff indicated that she was able to perform 30 to

2

45 minutes of light housekeeping before sitting down, taking a pain pill, and resting for at least half an hour. (R. at 46.) She testified that she naps daily for about two hours, after taking her prescribed afternoon medications. (R. at 47.) Plaintiff testified that she cannot run the vacuum cleaner or clean the bathtub. Plaintiff noted that she cooks and grocery shops with her husband. (R. at 50.) According to Plaintiff, her husband also helps with the laundry. (*Id.*)

Plaintiff testified that she smoked a half of pack of cigarettes a day. She acknowledged that her doctor told her to stop smoking and indicated that she had recently cut down from a pack per day. (R. at 33.) Plaintiff testified that she had a valid driver's license, but noted that she could not make long trips because her knees began to hurt and her legs would go numb. (R. at 35.) She indicated that she had not driven more than 15 miles since September 2010. (*Id.*)

Plaintiff testified that she began working part-time at Tudor's Biscuit World as a cook from September 2010 to June 2011. (R. at 35-36.) Plaintiff reported that she worked 35 hours a week. She noted that the job involved prolonged standing, and lifting/carrying objects up to 35 pounds. Plaintiff testified that she slowly reduced her hours in April 2011 because she was having difficulty standing for prolonged periods. (R. at 36-37.) Since June 2011, she had not worked or attempted to work in any capacity. (R. at 38.)

**B.     Vocational Expert Testimony**

Robert Breslin, testified as the vocational expert ("VE") at the administrative hearing. (R. at 53-57.) The VE testified that Plaintiff's past relevant work included a short order cook and warehouse supervisor, both at the light exertional level; and warehouse worker and janitorial, both at the medium exertional level. (R. at 53-55.)

3

The ALJ asked the VE a series of hypotheticals. First, the ALJ asked the VE to determine if a hypothetical person of Plaintiff's age, education, and work background could do Plaintiff's past relevant work with the following limitations: limited to lifting and carrying ten to twenty pounds, light standing and walking, light sitting, frequent stooping, occasional ladders, ropes, and scaffolds, and no temperature extremes and concentrated exposure to dust, gas, and fumes. (R. at 55.) Based on the above hypothetical, the VE acknowledged that Plaintiff could perform her past relevant work as a warehouse supervisor, short order cook, and cashier. (R. at 55-56.) Second, the ALJ asked the VE if a hypothetical individual with the above limitations who was also limited to sedentary work would be able to do her past relevant work. (R. at 56.) The VE testified that such a hypothetical person would not be able to return to Plaintiff's past relevant work. Finally, the VE testified that most employers would find it acceptable for a hypothetical employee to miss eight to twelve work days per year.

### III.   MEDICAL RECORDS AND OPINIONS

**A.   Anthony Armineous, M.D.**

In April 2010, Plaintiff saw Dr. Armineous with complaints of right-sided back pain radiated toward her neck. (R. at 280.) Musculoskeletal examination revealed no muscle aches, joint pain, or joint stiffness. (R. at 281.) Dr. Armineous administered a trigger point injection and discharged Plaintiff in good condition. (R. at 282.) He noted that Plaintiff tolerated the procedure well.

Dr. Armineous saw Plaintiff for follow-up in September 2010. (R. at 277.) Plaintiff complained of mid- to lower-back pain radiating to her hips. Upon examination, Dr. Armineous found tenderness of the lumbar spine on palpation, spasms of the paraspinal muscles, limited

4

lumbar spine range of motion with pain on hyperextension and lateral rotation, tenderness over the SI joint, and negative bilateral straight leg raise. (R. at 278.) He gave Plaintiff an injection of ketorolac tromethamine, a nonsteroidal anti-inflammatory drug (NSAID). (R. at 279.) Plaintiff received another injection in June 2011. (R. at 294.)

On October 29, 2010, Plaintiff complained that her back pain was getting worse (arthritis) and she "wanted something done." (R. at 268.) On examination, Plaintiff exhibited tenderness to palpation and muscle spasms, and her straight leg raise was now positive on the right. (R. at 268, 269.) Dr. Armineous assess Plaintiff with backache, intervertebral disc degeneration, and lumbar radiculopathy at L4 and L5. (R. at 269.)

A lumbar spine MRI taken on November 8, 2010, revealed minimal slight degenerative disc disease and facet arthropathy but no significant evidence of disc herniation, spinal or foraminal stenosis or spinal cord abnormality. (R. at 350.) Spinal x-rays taken on November 11, 2010 showed minimal degenerative changes in the mid cervical spine, and minimal early degenerative changes in the lumbar spine. (R. at 349.)

On March 31, 2011, Dr. Armineous found that Plaintiff had low back pain with muscle spasm. She did not have numbness or tingling of the limbs. Her straight leg raise was positive on the right. She had no muscle weakness or atrophy, and had normal sensation and knee jerks. Plaintiff was diagnosed with COPD, hypothyroidism, backache, intervertebral disc degeneration, lumbar facet syndrome. (R. at 250-52.)

### B.     Aaron Karr, D.O.[2]

In May 2011, Plaintiff reported occasional right leg sore and tightness to Dr. Karr. She also reported shooting pain radiating down her right lower extremity. Dr. Karr observed a normal gait, station and reflexes, and no respiratory abnormalities. (R. at 297-98.) A May 19, 2011, chest x-ray showed chronic interstitial disease and a suggestion of pulmonary fibrosis. The radiologist suggested that Plaintiff undergo a CT scan, noting that acute abnormalities were unlikely. (R. at 348.) A CT of Plaintiff's chest taken on June 9, 2011, showed pulmonary emphysematous with fibrosis. (R. at 347.)

When seen on August 3, 2011, Plaintiff complained of chest pain with burning. Dr. Karr noted she had no pain or discomfort and no shortness of breath. (R. at 289.) She had a cough and nasal discharge. (*Id.*) On examination, Plaintiff's lungs sounded normal and she was given antibiotics for a sinus infection. He also gave Plaintiff an injection for Solu-Medrol for her COPD. (R. at 290-91.) Dr. Karr interpreted Plaintiff's pulmonary function test and opined that Plaintiff suffered from a "mild obstruction." (R. at 346.)

On September 12, 2011, Dr. Karr noted costovertebral angle tenderness and lumbosacral spine tenderness on palpation. Plaintiff's straight leg test was positive. Plaintiff exhibited a normal gait, station, and reflexes. Dr. Karr found effusion in her knee but no muscle weakness. (R. at 331-33.) He ordered an x-ray of Plaintiff's right knee which was "unremarkable." (R. at 351.)

In January 2012, Dr. Karr reported a normal musculoskeletal examination, with "normal movement in all extremities," no hip weakness, no muscle weakness in the knee despite some

---

[2] Dr. Karr and Dr. Armineous are in the same practice.

effusion, and some tenderness in the spine. Plaintiff's gait, station, balance, and reflexes were normal. Plaintiff had no chest pain or discomfort. Her chest was normal to percussion. She had normal breath and voice sounds and no wheezing. (R. at 302-03.)

Plaintiff complained of bilateral knee pain in July 2012. On examination, Dr. Karr noted effusion in the knee. (R. at 339-40.) On October 19, 2012, Dr. Karr gave Plaintiff injections into her knees. (R. at 343.) Dr. Karr noted Plaintiff had impingement symptoms of her left shoulder awaiting MRI results. (R. at 344.) He wrote she had limited range of motion and "possible left rotator cuff tear." (*Id.*) Dr. Karr found normal musculoskeletal findings and normal movement of all extremities except Plaintiff's left arm that had limited abduction of 30%. (R. at 345.) On that day, Dr. Karr restricted Plaintiff to no stairs, no standing longer than 10 minutes, and no lifting over 20 pounds "for a short period of time." (R. at 343.)

**C.     Barry Bradford, D.C.**

Chiropractor, Dr. Bradford, treated Plaintiff from August 4, 2011 through December 9, 2011. (R. at 285-88, 308-15, 319-30, 334-36.) He treated her low back and hip pain with electrical stimulation and chiropractic manipulation. On August 8, 2011, Plaintiff described her low back pain as "stinging" after a busy weekend of cooking, lifting, and being with her grandchildren. (R. at 286.)

On September 6, 2011, Dr. Bradford found tenderness at the right S1 palpation and at C2-C5 and T5. (R. at 336.) On September 9, 2011, Plaintiff experienced low back pain with stinging and burning after cleaning her bathroom. She rated this pain at a level of 4 on a 0-10 visual analog scale. (R. at 334.)

7

On October 21, 2011, Plaintiff reported to Dr. Bradford that she was doing light house work with no problem except for sweeping and mopping and her back pain was 2 out of 10. (R. at 314.) Earlier that month, she drove lengthy distances to Columbus and Athens, and noticed her low back pain get increasingly worse. (R. at 322.) On November 17, 2011, Plaintiff reported soreness and pain after lifting her 17-pound granddaughter. She rated her pain at 8 out of 10. (R. at 312.) On November 22, 2011, Plaintiff reported that her low back was better ad that she felt "good overall." (R. at 310.) She rated her back at 4 out of 10 and her low back pain at 2 out of 10. (*Id.*)

**D.     State-Agency Evaluations**

On April 29, 2011, State-Agency physician, James Gahman, M.D., reviewed the record and determined that Plaintiff's physical impairments were not severe. (R. at 59-63.) On September 17, 2011, State-Agency physician, W. Jerry McCloud, M.D., reviewed the record and assessed Plaintiff's physical RFC. (R. at 65-71.) Dr. McCloud opined that Plaintiff could lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in a workday, and sit for about six hours in a workday. (R. at 70.) Dr. McCloud based his restrictions on the fact that Plaintiff "[h]ad decreased [range of motion] of most recent [physical examination] of spine, otherwise, other [physical examination] have been [within normal limits]. (*Id.*) He opined that Plaintiff was also limited to frequent stooping and crouching, and occasionally climbing ladders, ropes, and scaffold. (R. at 70-71.) Due to her COPD, he opined that Plaintiff should avoid concentration exposure to extreme heat, extreme cold, and respiratory irritants, such as fumes, odors, dust, and poor ventilation. (R. at 71.)

8

## IV.  THE ADMINISTRATIVE DECISION

On March 18, 2013, the ALJ issued her decision. (R. at 10-21.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. (R. at 15.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 1, 2011, the amended alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease and COPD. (*Id.*) The ALJ also found that Plaintiff's heart trouble, arthritis, hypertension and hyperlipidemia, and right knee pain were not severe impairments because there was no evidence that they would significantly interfere with Plaintiff's ability to engage in basic work-related activities. (R. at 16.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

evaluated Plaintiff's residual functional capacity ("RFC").[4] The ALJ found as follows with respect to Plaintiff's RFC:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: the [Plaintiff] is limited to frequent stooping and crouching and occasional climbing of ladders, ropes, and scaffolds. She should avoid concentrated exposure to extreme cold and extreme heat. Finally, the [Plaintiff] should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

(R. at 17, citation to record omitted.) In reaching this determination, the ALJ gave "great weight" to the opinion of the State-Agency reviewing physician, Dr. McCloud. The ALJ noted that Dr. McCloud's assessment was consistent with the diagnostic testing and clinical findings found in the objective medical evidence. (R. at 19.) The ALJ placed "limited weight" on Dr. Karr's assessment, finding he provided no reasoning or support for the limitations he imposed as work conditions for Plaintiff, and because "all of Dr. Karr's testing reflects normal or minimal changes." (*Id.*)

The ALJ further noted that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. She concluded, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (R. at 18.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work as a short order cook and warehouse supervisor. (R. at 20.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

---

[4] A claimant's "residual functional capacity" is an assessment of the most a claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

11

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ erred as follows: 1) under valuing the opinion of Plaintiff's treating physician, Dr. Karr, in her analysis of the medical-source opinions; 2) by failing to obtain the updated opinion of a medical expert; and 3) by failing to address Plaintiff's more recent shoulder injury. (ECF No. 11). The Court will address each of these purported errors in turn.

### A. Weighing of Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

12

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*
Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

13

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The Court finds that the ALJ complied with the necessary procedural requirements in determining how much weight to assign to Dr. Karr's opinion. The ALJ provided the following explanation for affording limited weight to Dr. Karr's opinion:

> [T]he undersigned places limited weight on the assessment provided by the claimant's treating physician, Dr. Aaron W. Karr, D.O. Dr. Karr opined that the claimant's work restrictions included no stairs, no standing longer than 10 minutes, and no lifting more than 20 pounds for a short period of time. Dr. Karr provides no reasoning or support for such limitations. Likewise, all of Dr. Karr's testing reflects normal or minimal changes. Therefore, because Dr. Karr's own objective medical evidence fails to support such limitations, the undersigned gives it little weight.

(R. at 19 (internal citations omitted.))

Substantial evidence supports the ALJ's evaluation of and the weight assigned to Dr. Karr's opinion. First, as noted above, the ALJ provided good reasons for discounting Dr. Karr's opinion as inconsistent with the objective medical evidence. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (concluding that the ALJ met the "good reasons" requirement for a variety of reasons, including by noting that the treating physician's findings were "unsupported by objective medical findings and inconsistent with the record as a whole."); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 193 (6th Cir. 2009) (concluding that the ALJ met the good reason requirement by noting that the opinion was inconsistent with the physician's

14

treatment notes and with the record evidence). The ALJ supported her conclusion by noting that Dr. Karr provided no reasoning or support for the limitations. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (concluding that an ALJ is "'not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation'") (quoting *Cohen v. Sec. of Dept. of Health & Human Servs.*, 964 F.3d 524, 529 (6th Cir. 1992)). The ALJ also pointed out inconsistencies in Dr. Karr's own treatment notes. Specifically, the ALJ noted that Dr. Karr's testing "reflects normal or minimal changes," which the ALJ perceived as inconsistent with the limitations Dr. Karr opined. (R. at 19.) Indeed, most of the clinical observations Dr. Karr made over the course of his treatment of Plaintiff indicate unremarkable or normal findings which undermine his extreme assessment regarding her work restrictions. Finally, the ALJ instead reasonably assigned "great weight" to the opinion of State-Agency reviewer Dr. McCloud, noting that the limitations opined by Dr. McCloud were consistent with the objective medical evidence in the record. *See* S.S.R. 96-6p ("In appropriate circumstances, opinions from state agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources [because it is based on the record as a whole].") Under these circumstances, the ALJ properly discredited the opinion of Dr. Karr with regard to work restrictions.

      To the extent Plaintiff asserts that the ALJ had an affirmative duty to contact Dr. Karr to inquire about the basis of his limitations, that challenge is misplaced. (Statement of Errors 9, ECF No. 11.) The United States Court of Appeals for the Sixth Circuit addressed this issue as follows:

15

> The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record.

*Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him [or her] the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). Here, Plaintiff proceeded before the ALJ with the assistance of counsel. A review of the transcript indicates that Plaintiff was well-spoken and able to present her case before the ALJ. No special circumstances required a heightened duty on the ALJ to develop the record. The ALJ, therefore, did not err in this respect.

Similarly, to the extent Plaintiff asserts that the ALJ erred in assigning "great weight" to the opinion of the State-Agency reviewers because their reviews were completed based on "only a portion" of the medical record, that challenge is not well taken. Specifically, Plaintiff asserts that the State-Agency reviewing physicians "did not have before them testing which confirmed extensive and chronic emphysematous changes in plaintiff's lungs." (Statement of Errors 12, ECF No. 11.) Plaintiff asserts that, based on information found on the internet (but not in the objective medical testing in the record), Plaintiff's COPD could meet Listing 3.02 and the ALJ erred in failing to consult with an expert about these results to which the State-Agency reviewers were not privy.

"An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 CFR §§ 404.1517, 416.917). If a review done by a state agency physician is not based on the complete case record, there must be "some indication that the ALJ at least considered these facts" before giving the opinion of the state agency reviewer greater weight than the claimant's treating physician. *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007). Here, substantial evidence supports the ALJ's assignment of great weight to the opinions of the State-Agency reviewers. First, the State-Agency reviewers had access to the bulk of Plaintiff's record related to her pulmonary issues and back problems. *See, e.g., Landenberger v. Comm'r of Soc. Sec.*, No. 2:12-CV-0091, 2012 WL 6114740, at *6 (S.D. Ohio Dec. 10, 2012) *report and recommendation adopted*, No. 2:12-CV-91, 2013 WL 143374 (S.D. Ohio Jan. 11, 2013) (concluding that the ALJ erred in affording great weight to State-Agency physicians who did not have access to the "bulk of the evidence about plaintiff's mental condition."). Dr. McCloud opined that Plaintiff's RFC should include environmental limitations "due to COPD." (R. at 71.) The ALJ incorporated restrictions based on Plaintiff's COPD into her RFC. Specifically, she concluded that Plaintiff should "avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation" based on the restrictions opined by the State-Agency reviewers. (R. at 17.) Plaintiff's treating physician did not provide any environmental limitations related to Plaintiff's pulmonary issues. The ALJ also supported her conclusions by noting that the administrator of Plaintiff's Pulmonary Function Study "concluded that the claimant's respiratory impairment involved only 'mild' obstruction." (R. at 19.) Substantial evidence therefore supports the ALJ's weighing of the opinion evidence.

### B. Shoulder Injury

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Substantial evidence supports the ALJ's treatment of Plaintiff's shoulder injury as it relates to Plaintiff's RFC.  Plaintiff asserts that the ALJ erred in failing to account for Dr. Karr's treatment notes indicating that Plaintiff had impingement symptoms of her left shoulder, with limited range of motion and a possible rotator cuff tear.  (R. at 344.)  Plaintiff maintains that such an injury could significantly reduce Plaintiff's vocational profile. (Statement of Errors 13, ECF No. 11.)  The only shoulder-related limitation Dr. Karr noted, however, was that Plaintiff was "unable to lift more than 20 [pounds] for a short period of time."  (R. at 343.)  The ALJ adequately incorporated this restriction into Plaintiff's RFC by limiting Plaintiff to "light work as defined in 20 C.F.R. § 404.1576(b)," which defines light work as "lifting no more than 20 pounds at a time."  20 C.F.R. § 404.1567(b).   A review of the entire record indicates that nothing in Plaintiff's treatment records or in the opinion evidence contradicts such a finding.  Plaintiff has failed to provide any objective evidence demonstrating a disabling abnormality in her shoulder.  Because she has not shown her alleged shoulder impairment required any greater limitations than the 20-pound lifting restriction recommended by Dr. Karr and incorporated by the ALJ in the RFC, substantial evidence supports her determination.  The ALJ therefore properly addressed Plaintiff's shoulder injury with respect to her RFC.

## VII.  DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: August 25, 2014	/s/ *Elizabeth A. Preston Deavers*
	Elizabeth A. Preston Deavers
	United States Magistrate Judge